PALM BEACH ESTATES, *et al.,* v. BULA E. CROKER, *et al.*

152 So. 416.
Opinions Filed August 2, 1933.
Opinion on Rehearing Filed January 16, 1934.

*Fleming, Hamilton, Diver & Lickliter,* for Appellants;
*Paty, Warwick & Lake, Milam, McIlvane & Milam, Dun-*

can, *Hamlin & Duncan, Wideman, Wideman & Wardlaw, Sutton, Tillman & Reeves, Treadwell & Treadwell* and *John B. Singletary,* for Appellees.

PER CURIAM.—Bula E. Croker, widow of Richard Croker, brought a bill of complaint against Palm Beach Estates, a corporation, and J. B. McDonald to have cancelled a trust agreement between Bula E. Croker and her then living husband, Richard Croker, and J. B. McDonald, whereby lands conveyed in trust by the Crokers to McDonald could be purchased by McDonald or his assigns. By an answer and counterclaim, Palm Beach Estates and J. B. McDonald, upon appropriate averments and the deposit into the registry of the Court of the first cash payment on the purchase price of the land and a similar deposit of notes and a mortgage for the remainder of the purchase price under the contract of purchase, prayed an enforced compliance by Mrs. Croker with the right of McDonald or his assignee to purchase the land, McDonald having conveyed to Palm Beach Estates the title to the lands together with a transfer of the contract right to purchase the lands. The Court decreed Palm Beach Estates, the assignee of J. B. McDonald, to be entitled to an enforcement of the contract right to purchase, which contract did not provide for forfeiture of partial payments made, should the property be purchased by McDonald or his assignees and full payments be not duly made. See Croker v. Palm Beach Estates, 95 Fla. 171, 114 So. 225, as to rulings on pleadings and Palm Beach Estates, *et al.,* v. Croker, 106 Fla. 617, 143 So. 792, affirming with modifications as to interest payments a final decree rendered August 21, 1929, in favor of the defendants. Subsequently Mrs. Croker filed an offer to perform and an acceptanc of the money in the registry of the court, but it has not been paid to her, the modified final decree providing that:

"The cash on hand in the registry of the Court, the cash to be paid by the defendants, notes numbered four (4) and five (5), and the mortgage to be executed and delivered by the defendants, shall be held by the Clerk of the Circuit Court until and subject to further order of the Court."

The modified final decree rendered November 17, 1932, pursuant to the opinion of this Court (143 So. 792) adjudicated in effect that the defendants J. B. McDonald and Palm Beach Estates shall among other things, pay, and that the complainant Bula E. Croker shall accept the amount in the registry of the Court, viz.:

"Three Hundred Twenty-one Thousand One Hundred Four and 73/100 Dollars ($321,104.73) heretofore by the defendants and voluntarily accepted by the complainant, October 31, in 1932, now in the registry of the court, which sum shall hereafter be held by the Clerk of the Circuit Court for the use and benefit of, the complainant, subject to the further provisions of these modifications of the final decree." Also

"Two Hundred Eight Thousand Three Hundred Sixty-one and 27/100 Dollars ($208,361.27) to be paid in cash representing the balance due and unpaid on the initial payment of the purchase price."

The two amounts being the initial payment on the contract of purchase. Numerous other payments were decreed and notes and mortgage were required to be executed to Mrs. Croker. Upon full compliance with the decree by defendants, the complainant and her privies would be enjoined to claim the lands against the defendants. The modified final decree contains the following:

"12th. The aggregate of the sums above recited, together with said notes and mortgage, having been paid and delivered by defendants to the Clerk of the Circuit Court

for the use and benefit of complainant, Bula E. Croker, in accordance with the terms of this decree, the Clerk of the Circuit Court shall forthwith report the same to the Court. The cash on hand in the registry of the Court, the cash to be paid by the defendants, notes numbered four (4) and five (5), and the mortgage to be executed and delivered by the defendants, shall be held by the Clerk of the Circuit Court until and subject to further order of the Court."

"13th. In the event defendants, J. B. McDonald and Palm Beach Estates, fail to pay to complainant, Bula E. Croker, the aggregate of the foregoing sums provided by the fourth (4th) paragraph of this decree in sub-paragraphs (a) to (p), both inclusive, and fail to deliver to the complainant the said notes and mortgage as hereinbefore provided, all according to the provisions of this decree, then, and in such event the counterclaim of defendants shall stand dismissed, the said contract of July 12, 1920, between complainant and her husband and J. B. McDonald shall be terminated, and the two several deeds dated July 12, 1920, between complainant and her husband and J. B. McDonald, recorded respectively in the Palm Beach County Records, in Deed Book 142, at page 108, and in Deed Book 142, at page 109, and the deed dated October 30, 1920, from complainant and her husband to said J. B. McDonald, recorded in Deed Book 146, at page 212, of the Palm Beach County public records, and shall be cancelled."

An appeal was taken by the defendants from the modified final decree.

The litigation and the adjudications in the lower court and in this Court proceeded upon the theory that either Mrs. Croker was entitled to a cancellation of the conveyance and the contract executed by the Crokers to McDonald or that McDonald and his assignee were entitled to have

the title to the lands quieted in them upon complying with the terms of the purchase as an entirety under the contract.

By the terms of the modified final decree the clerk of the court is required to hold the money in the registry of the court and to receive the other cash sums required to be paid on the purchase price of the lands as also the notes and mortgage to be executed for the balance of the purchase price, and to hold all such sums and instruments "until and subject to the further order of the court." The entire proceedings contemplate and the adjudications require the tender by the defendants and acceptance by Mrs. Croker of the stated payments in cash and in notes secured by mortgage to be accomplished as an entire single transaction. There is no provision in the contract or in the decree for forfeitures of initial or other payments for failure to duly and fully comply with the terms of the contract under the decree.

On October 31, 1932, Mrs. Croker filed a petition containing the following:

"Your Petitioner, Bula E. Croker, hereby voluntarily agrees to specifically perform the covenants, agreements and stipulations upon her part undertaken to be done and performed by the provisions of the contract of July 12, 1920, for the benefit of Palm Beach Estates, a corporation, and J. B. McDonald, and your Petitioner, hereby voluntarily accepts and agrees to accept Five Hundred Twenty-nine Thousand Four Hundred Sixty-six Dollars ($529,466.00) paid to the Clerk of this Court or into the registry of this Court, or so much thereof as now remains, as part payment, and the other moneys to be paid and the notes and mortgage tendered and fixed, directed and decreed by the opinion of the Supreme Court herein and as will be fixed and de-

creed by this Court in accordance therewith by its modified and final decree."

The modified final decree dated November 17, 1932, did not decree the money in the registry of the Court to be paid to Mrs'. Croker, except as a part of a complete performance of the decree for specific performance, but required the Clerk to receive and hold further payments and the notes and mortgage as decreed to be paid and executed by the defendants together with the funds in the registry of the Court, "until and subject to the further order of the court." Until the decreed amounts as payments have been paid to the Clerk, and the notes and mortgage have been delivered to the Clerk as decreed, the Court cannot have its decree performed as contemplated.

A failure of the defendants to duly and fully comply with the modified final decree entitles the complainant under the terms of the modified final decree to a dismissal of the counterclaim and to a cancellation of the deeds of conveyance and of the contract executed by the Crokers to J. B. McDonald; but the decree does not provide for, and there is no basis for decreeing that the money that was paid into the registry of the court by Palm Beach Estates, shall be paid to Mrs. Croker as partial payment on the contract price or as damages or forfeiture for failure of the defendants to duly and fully comply with the contract and decree of the Court. The money was paid into the registry of the Court by the defendant, the Palm Beach Estates, as a tender of the first payment of the contract price, which tender was refused by Mrs. Croker until she offered to accept it, October 31, 1932, after this Court had ordered a modification of the final decree of August 21, 1927. The modified final decree dated November 17, 1932, did not adjudge Mrs. Croker to be entitled to the sum that had been paid into the

registry of the court by Palm Beach estates except as such sum would constitute a portion of the total amount of cash with notes and mortgage ordered delivered to the Clerk by the defendants to be held by the Clerk "until and subject to the further order of the Court."

Manifestly, under the modified final decree the title to the sum in the registry of the Court does not pass from the depositor to Mrs. Croker except as a part of a complete transaction; and if the defendants do not fully comply with the decree the deeds and mortgage will be cancelled and the lands will be Mrs. Croker's, putting her in *status quo,* while the sum in the registry of the Court will be returned to the depositor so that it will be placed in *status quo,* unless otherwise decreed in adjudicating the equities of the case. There is nothing in the contract or in the decree to transfer the title to the deposit from the depositor to Mrs. Croker, except as a part of a complete performance of the decree.

What is said in the opinions in Palm Beach Company v. Croker, 108 Fla. 265, 146 So. 230, and Palm Beach Company v. Palm Beach Estates, *et al.,* 110 Fla. 77, 148 So. 544, as to Mrs. Croker being entitled to the deposit in the registry of the Court, was predicated upon the modified final decree of November 17, 1932, which had not then been appealed from and interpreted by this Court. In neither case did the petitioner, Palm Beach Company, show a right in the funds demanded as against Mrs. Croker. It was not necessary in either case to adjudge the right of Mrs. Croker to the fund as against the Palm Beach Estates. This is indicated in the opinion in each case.

If the modified final decree as framed, be construed to adjudge to Mrs. Croker a right to the sum deposited in the registry of the Court by Palm Beach Estates, except as a

part of a complete execution of the modified final decree, the decree would be erroneous and subject to reversal on this appeal taken from such final decree.

Since the decree reserved the authority of the Court to adjudicate the complete execution of the decree, the fact of the failure of the defendants to comply with the decree may be called to the attention of the court for appropriate orders without invoking a bill of review.

By petition the defendants set up their inability to comply with the modified final decree, due to change in business conditions pending the litigation following the suit instituted by Mrs. Croker to have the contract cancelled. The petitioners prayed for an order decreeing that the petitioners, Palm Beach Estates and J. B. McDonald, are entitled to receive the entire amount of the deposit in the registry of the Court. This petition was stricken, and the petitioners appealed at the same time the appeal was taken by them from the modified final decree.

A corporate resolution under date of November 26, 1932, adopted by Palm Beach Estates, that the money in the registry of the court "be paid to or held for the benefit of Mrs. Bula E. Croker" is accompanied by a resolution of the corporation of "the willingness of Palm Beach Estates and J. B. McDonald to comply with the amended decree of the Court entered November 17, 1932." This indicates a willingness at that time to comply with the decree, which compliance would give the deposit to Mrs. Croker. Subsequently the petition herein referred to was filed alleging the inability of the defendant petitioners to comply with the decree because of financial conditions arising pending the litigation instituted by Mrs. Croker.

Therefore it appears that Mrs. Croker refused to perform the contract and instituted litigation in December,

1923, to determine the validity of the contract, pending which litigation unusual changes in the general financial conditions made it impossible for the defendants to comply with the modified .final decree as rendered November 17, 1932, yet McDonald and his assignee have failed to comply with the decree which they sought and obtained against Mrs. Croker, while she now seeks to comply with the modified decree. Mrs. Croker was successful in defending against some of the claims of the appellants in the appeal from the final decree of August 21, 1929, and the court costs in such appeal were by this Court ordered to be paid in equal portions by the appellants and appellee. The title to the money now in the registry of the Court remained in Palm Beach Estates at the time the modified decree was rendered, and the disposition of such money is provided for in the modified final decree only in case the decree is fully executed; yet as it now appears that the modified decree cannot be performed by McDonald and his assignee, and as Mrs. Croker did not wholly fail in her contentions on the appeal taken by Palm Beach Estates and J. B. McDonald from the final decree of August 21, 1929, and as she offers to perform under the modified final decree, she is (notwithstanding the fact that she first instituted the litigation which caused the delay in performing the contract as made, which delay contributed to the inability of the defendant-appellants to perform) in equity entitled to participate to a limited extent at least in the distribution of the fund now in the registry of the court, deposited there as a part payment on the contract, if she can show she sustained damages by reason of expenses incurred because of the appeal taken by Palm Beach Estates and J. B. McDonald from the final decree of August 21, 1929, in which she was partially successful, as against the claims of the appellants.

The modified final decree of November 17, 1932, here

appealed from, which provides for further proceedings by the Court in the execution of the decree, should be affirmed, and the cause remanded for appropriate proceedings and for a further provision by supplemental procedure and decree as to the disposition of the funds in court, if the modified decree for November 17, 1932, is not specifically and wholly performed; and in such further proceedings it may be determined and decreed what part, if any, of the money on deposit in the registry of the court should under all the circumstances of the case, in equity and justice to both parties, be paid to Mrs. Croker to compensate her for any damage she has sustained in defending the proceedings on the appeal taken by Palm Beach Estates and J. B. McDonald from the final decree of August 21, 1929, and in subsequent proceedings in the cause.

The order appealed from which struck the appellants' petition is reversed; and the modified final decree appealed from providing for further proceedings by the court in the enforcement of the decree, is affirmed, and the cause is remanded for further appropriate proceedings and decree as indicated in this opinion.

It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

ELLIS, J., dissents in part.

BROWN, J., disqualified.

## ON REHEARING.

LONG, Circuit Judge.—This cause has been before this Court in its many angles for a number of years. Five opinions have been handed down deciding the issues presented. It would, therefore, seem futile to again refer to the many authorities cited in the former opinions, or to,

at any length, recite again the history of the cause.   Suffice
it to say, that in the year 1932, Bula E. Croker filed her bill
for the cancellation of a trust deed formerly executed by
herself and husband to one McDonald, together with a con-
tract of sale in which was incorporated an option to pur-
chase.   To this bill Palm Beach Estates filed an answer
seeking specific performance of the contract.   Palm Beach
Estates at that time holding the title to the lands by deed
from McDonald and the contract as the assignee of Mc-
Donald.   Palm Beach Estates treating their answer as a
cross bill prosecuted its suit to enforce the contract of sale,
and elected to exercise its option to purchase.   Motion to
strike and exceptions to this answer were overruled by the
Chancellor, and such ruling affirmed by this Court.

Croker v. Palm Beach Estates, 114 So. 225.

By virtue of the terms of the option Palm Beach Estates
was required to, and did, tender into Court the sum of
$529,466.00, first payment on the lands.   Because of the
failure of the Bank in which this tender was deposited the
sum of $217,000 was lost.   The question then arose as to
who should sustain the loss.   In determining this question
the Court held that the loss fell upon Palm Beach Estates.
The amount remaining in the Registry of the Court as a
tender was the sum of $321,104.73.   Upon final hearing of
the cause the Chancellor entered a final decree dated August
21, 1929, finding the equities to be with Palm Beach Estates,
decreeing that Bula E. Croker specifically performed, and
that Palm Beach Estates pay to Mrs. Croker the sum ten-
dered, to-wit: $529,466 without deduction for the loss of
the $217,000 occasioned by failure of the Bank, and to de-
liver the notes endorsed as required by the contract of sale
and purchase—in other words, granting the prayer of the
answer or cross bill of said Palm Beach Estates.   This de-

cree was appealed from, and this Court, by opinion of Au-
gust 31, 1932, affirmed the same but directed a modification
of said decree to the extent that Palm Beach Estates be ·
relieved from the payment of certain interest which had
accumulated,

"We are, therefore, of the opinion that Appellants' con-
tention with regard to an abatement of the interest which
accrued on the agreed purchase price *pendente lite* are well
taken, and that decree should be modified to accord to such
Appellants the benefit of such an abatement when comply-
ing with the decree,"

and further that the Appellants, Palm Beach Estates, should
be permitted to give notes and security not as of the date
of the original tender, October 15, 1924, but as of the date
of the final decree, August 21, 1929. ·

Palm Beach Estates v. Croker, 143 So. 792.

On the 17th of November, 1932, the Chancellor entered
an order modifying the final decree in exact compliance with
the mandate of this Court. So it was that again the movant
for specific performance on the part of Bula E. Croker was
granted the relief prayed for, and this Court having af-
firmed the court below upon the merits of the cause and
reversed only as to the findings of certain amounts, at the
same time giving specific directions as to how the decree
should be modified. The only question that could be de-
termined by this Court upon appeal from such modified
decree was, did the final decree as modified conform to its
mandate.

The contract entered into between the Crokers and Mc-
Donald provided a right in McDonald under which he might
become the purchaser of the property, also authority to
convey title to the land which he might sell. The Crokers
at the same time conveyed this land to McDonald, who in

turn deeded the lands to Palm Beach Estates, Mrs. Croker having parted with the fee simple title to her land had left only an equity which gave her the right to an accounting from McDonald for the price of such lands as he (McDonald) might convey, or in the event the option was exercised. The equity then consisted of the right to receive the purchase money. There can be no question but that Palm Beach Estates and McDonald were the actors in a suit for specific performance against Mrs. Croker, and the counterclaim was in the nature of an independent suit in equity seeking such relief.

The Court, on August 21, 1929, settled the equities in favor of Palm Beach Estates, and decreed that Mrs. Croker should specifically perform; that her rights were inferior to the rights of the counterclaimants to the lands in litigation, and that Bula E. Croker accept the sum of money which McDonald and Palm Beach Estates were ordered to pay on or before the day named in the decree.

"The amounts, the aggregate of which said defendants will pay as aforesaid to complainant, Bula E. Croker, and the amounts, the aggregate of which said complainant is hereby decreed to accept are as follows:

"Five hundred twenty-nine thousand, four hundred sixty-six dollars ($29,466.00) being an amount equal to the sum which was paid by the defendants into the Registry of the Court on October 15, 1924, when the defendants exercised this option to buy the lands."

It was further decreed:

"The aggregate of the sum above recited having been tendered to complainant together with the note and mortgage pursuant to the terms of this decree, then the defendant, Palm Beach Estates, a corporation, is ordered, adjudged and decreed to be the absolute and indefeasible owner

of the lands hereinbefore described, in fee simple, forever freed, exonerated and discharged from any and all liens, claims, demands, right, title and/or interest of the complainant, Bula E. Croker, and all persons claiming by, through, or under her in and to the said lands or any part or portion thereof, except the interest of complainant under said note numbered five, and the mortgage to secure same."

The purpose of the counterclaim was to compel Mrs. Croker to accept the money and that was the only thing the Court could require. The title to the property was already vested in Palm Beach Estates. Mrs. Croker had fully performed and she became then and there, of the date of the decree, entitled to receive the money remaining in the Registry of the Court. Certainly her rights could not be affected by a subsequent default on the part of the movants for the decree.

"He who seeks equity must do equity."

The decree fixed a time for performance. It did not alter the contract of the parties, nor did it make a new contract. The contract had been merged into the decree and the rights of the parties fixed and determined, and if Palm Beach Estates' sustain a loss because of their default, then it can only be due to their refusal to do equity, for upon their representation that they were willing and able to perform did they successfully prosecute the suit, which in the end required Mrs. Croker to specifically perform. Can it be for a moment contended that because Palm Beach Estates have failed and refused to perform the decree sought by them and entered in their behalf, thereby sustaining a loss, that it is the fault of Mrs. Croker. Bula E. Croker occupies the position in this suit of one not wishing to sell her equity in the land, but is required by a decree of the Court to do so, and to accept the purchase price agreed upon.

The question of her damage has nothing to do in this cause. The money in the Registry of the Court was and is a part of the purchase price, and the title and ownership of the money passed to Mrs. Croker under this decree entered in the suit prosecuted by, and at the instance of Palm Beach Estates.

The case of Taylor v. Rawlins, cited so frequently in the Brief of Palm Beach Estates, is not a parallel case. Bula E. Croker is not in the position of one, who upon default of his vendee, takes possession of the land, and then retaining the purchase money paid on account brings suit to remove the contract as a cloud upon his title. But the Appellants Palm Beach Estates as vendees having paid a part of the purchase price and obtained a decree requiring the vendor to perform, find that it has made a bad bargain, and undertakes to recover the money paid.

"No rule in respect to the contract is better settled than this: That the party who has advanced money, or done an act in part performance of the agreement, and then stops and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done."

"While forfeitures are not favored either in law or equity, it is equally true that neither law nor equity favors the negligent, nor do they hold out a premium to the careless, or one who shows anything else than a prompt and ready disposition to comply with his undertaking."

Realty Security Corporation v. Johnson, 111 So., page 536.

It appears from the record that the mandate of this Court affirming the decree of August 21, 1929, but modifying same, was dated October 28, 1932, and recorded October

31, 1932; that upon the same day Bula E. Croker filed her acceptance of the modified decree to be rendered in conformance with the mandate, which acceptance is as follows:

"Your Petitioner, Bula E. Croker, hereby voluntarily agrees to specifically perform the covenants, agreements and stipulations upon her part undertaken to be done and performed by the provisions of the contract of July 12, 1920, for the benefit of Palm Beach Estates, a corporation, and J. B. McDonald, and your Petitioner, hereby voluntarily accepts and agrees to accept the Five Hundred Twenty-nine Thousand Four Hundred Sixty-six Dollars ($529,466.00) paid to the Clerk of this Court or into the registry of this Court, or so much thereof as now remains, as part payment, and the other moneys to be paid and the notes and mortgage tendered as fixed, directed and decreed by the opinion of the Supreme Court herein and as will be fixed and decreed by this Court in accordance therewith by its modified and final decree.

"Petitioner voluntarily agrees for this Court to enter its final, modified decree as above stated; that said Palm Beach Estates be decreed to be the absolute and indefeasible owner of the lands described in the Counterclaim, in fee simple, forever free, exonerated and discharged from any and all liens, claims and demands, right, title, and/or interest of your Petitioner, Bula E. Croker, and of all persons claiming by, through or under her in or to said lands or any part or portion thereof except the purchase money mortgage from defendants to your Petitioner, complainant, herein.

"And your Petitioner prays that the Clerk of this Court pay to her the moneys now in his hands as aforesaid or in the registry of this Court and that the Court direct all things to be done in the premises that are meet and proper by virtue of this Acceptance and Petition and of the opinion

and decree of the Supreme Court of Florida and the mandate thereof now on file in this Court.

"BULA E. CROKER,
"Petitioner and Complainant."

Thereafter Palm Beach Company on November 14, 1932, filed its petition to intervene, claiming the money in the registry of the Court. On November 26, 1932, at a hearing upon this petition, Palm Beach Estates read to the Court and had incorporated in the record a resolution of its Board of Directors, to-wit:

"*Whereas,* the Palm Beach Estates, in its litigation with Mrs. Bula Croker, tendered into Court the sum of Five Hundred Twenty-nine Thousand, Four Hundred Sixty-six Dollars ($529,466.00); and

"*Whereas,* said sum was tendered in good faith by the Palm Beach Estates for the use and benefit of Mrs. Bula E. Croker; and

"*Whereas,* a portion of said sum was lost in the failure of the Farmers' Bank & Trust Company but there is still in Court of said sum approximately Three Hundred Twenty-one Thousand Dollars ($321,000.00); and

"*Whereas,* the said Bula E. Croker has formally accepted said sum and now claims the right to have it paid to her; and

"*Whereas,* the Palm Beach Company is seeking to intervene for the purpose of contesting her right and claiming the right to take down said sum from the registry of the Court and claims to have an assignment of said sum from Palm Beach Estates; and

"*Whereas,* the assignment made by the Palm Beach Estates to the Palm Beach Company was expressly made subject to the rights of Mrs. Bula E. Croker; and

"*Whereas,* the Palm Beach Estates now feels the said sum

remaining in the registry of the Court is the money of Bula E. Croker and is not the money of the Palm Beach Company, THEREFORE,

"BE IT RESOLVED BY THE BOARD OF DIRECTORS OF THE PALM BEACH ESTATES: That said Palm Beach Estates go on record as being opposed to the Palm Beach Company withdrawing said sum in the registry of this Court and as insisting that the money be paid to or held for the benefit of Mrs. Bula E. Croker.

"BE IT FURTHER RESOLVED: That our attorney, Mr. C. D. Blackwell, convey to the Court the substance of this resolution and the attitude of the Palm Beach Estates with respect to the said sum of money now in the registry of this Court and the willingness of Palm Beach Estates and J. B. McDonald to comply with the amended decree of the Court entered November 17, 1932.

"There being no further business, the meeting adjourned.
"CORRECT:

"EWING GRAHAM, Vice-President."

This petition of intervention was disposed of by this Court, speaking through Mr. Justice BUFORD, in affirming the order of the Chancellor dismissing the petition and at the same time holding that the Palm Beach Company showed no title or lien against the fund in the registry of the Court, and that the original Complainant and Defendants are satisfied with the final modified decree.

146 So. Page 230.

On February 17, 1933, Palm Beach Company filed its second claim to the money in the registry of the Court, and this Court again affirmed the Chancellor's order of dismissal, holding that the terms of the mortgage did not incumber the money; and further that

"Although she has lost in the litigation, she has nevertheless become entitled to a fund in Court which has accrued to her as a part of the initial payment for her land. But that fund was ordered paid to her, not because she won, but by reason of the fact that she lost her case, and the adversary parties defaulted after decree."

Speaking further of the money deposited, this Court said:

"Mrs. Croker has now become its owner under a decree entered against her in the specific performance suit by reason of the fact that the other parties defaulted in complying with such decree."

It appears from the record that, after Bula E. Croker had filed her acceptance of the fund, thereby expressing her willingness to abide the final modified decree, several parties with claims against Mrs. Croker, and claiming an interest in the fund applied for and were permitted to file their petitions of intervention which were not contested by Mrs. Croker.

It does seem that after the entry of the final decree, the final modified decree, and the several holdings of this Court in no uncertain language that the sum tendered and deposited was a part of the purchase price, and that Mrs. Croker had become its owner under a decree entered against her, and both parties, complainants and defendants, had expressed their willingness to comply with said final modified decree, that this litigation should have ended. But, we find further from the record that almost five months after having signified its willingness to comply with the final modified decree, and after having stated in its resolution that the sum remaining in the registry of the Court is the money of Bula E. Croker, Palm Beach Estates filed a petition and amended petition claiming the moneys in the registry of the Court because of the depreciation in the

value of the lands, because of their inability to borrow money to pay for same, and alleging that Mrs. Croker had clouded the title to said lands. Which petition on motion was stricken by the Chancellor on the 9th day of May, 1933. This petition is a pleading unknown to the practice in this State. It cannot be treated as a bill of review or in the nature of a bill of review. Every matter alleged in the petition was known, or by the exercise of reasonable diligence could have been known to Appellants at the time of, and prior to the entry of the modified decree. The record is silent as to any of these matters being newly discovered and not known to Appellants at the time of entry of the modified decree. It is but an effort to alter and change a decree by alleging new matter without showing that the new matter alleged was not known to Appellants when the modified decree was entered, or could not have been known to them by the exercise of reasonable diligence, which under the ruling of this Court, is not permissible.

Stribling v. Hart, 20 Fla. 236.

Certainly the Appellant had knowledge of the decrease in the value of the lands on November 28, 1932, when their acceptance of the modified decree was filed. Certainly Appellant had knowledge, and it is clearly shown that every lien, conveyance or mortgage, claimed to constitute a cloud on the title (which at that time was not vested in Mrs. Croker), was a matter of record. Yet with full knowledge of all these matters Appellants filed their acceptance of the decree entered in their favor and thereby expressed their willingness and ability to perform its terms; by its resolution asked the Court to pay the money over to Mrs. Croker or to hold it for her benefit, stating in no uncertain terms that they felt that the money there remaining in the registry of the Court was the money of Bula E. Croker.

Further than that, Appellant was a party to two appeals in this Court by Palm Beach Company and remained silent thus acquiescing in a judicial determination that the money in the registry of the Court was the property of Bula E. Croker. Justice will not permit a party litigant to approbate and reprobate in the same cause of action. Justice will not permit a party to a cause to approbate a decree, and by so doing admit that it is just and valid, and then subsequently upon finding that for some reason he cannot perform, reprobate the decree for no other purpose than to be relieved of his obligation under the decree.

Following the filing of this petition and on May 9th, 1933, Palm Beach Estates by its Board of Directors passed another resolution to the effect that since the enactment of the resolution filed November 26, 1932, stating that the money was the property of Bula E. Croker, that "the outstanding differences between these corporations have been settled and adjusted upon terms mutually satisfactory to said Palm Beach Company and to said Palm Beach Estates" "and to take such steps as the attorneys may deem advisable to establish the said fund of $321,104.73 as the property of Palm Beach Estates and J. B. McDonald, or the property of either." The default of Appellants is admitted. They prosecuted the cause which resulted in a decree in their favor. They accepted the decree and signified their willingness to perform. The decree fixed and determined the status of Mrs. Croker as that of a vendor defendant to a specific performance suit who had fully and completely performed; it fixed and determined the status of Appellants as vendees who had prevailed in a specific performance suit, and who had partially performed and ordered that Appellants complete performance by paying the balance of the purchase money and upon default therein that their rights and equities be cancelled.

As to the appeal from the modified decree the only question that could be determined by this Court is, did the final decree as modified conform to the mandate. This, for the reason that this Court affirmed the final decree entered by the lower court on the 21st day of August, 1929, upon the merits of the cause and reversed only as to the findings of certain amounts, at the same time giving specific directions as to how the decree should be modified.

And the Chancellor, by his order, having modified the decree in full compliance with the mandate, the modified decree is affirmed.

We are in accord with the contention that to reverse the orders of the Chancellor striking the petition would be to permit Appellants to assume a position with reference to the decree inconsistent with their attitude to said decree in the court below. To reverse the modified decree would be virtually saying that a solemn decree for specific performance should be binding on the one party, but optional with the other party as to whether it should perform or not.

The orders of the Chancellor striking petition are affirmed.

The final modified decree affirmed and the Chancellor directed to enter an order that the money in the registry of the Court be paid to Bula E. Croker subject to the rights of the intervenors.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.

BUFORD, concurs in part.

BROWN, J., disqualified.

BUFORD, J. (concurring specially).—This case, because of its voluminous record coupled with the fact that property rights of great value are involved, has given counsel for the respective parties and members of this Court a great deal

of concern and has required of them an extraordinary degree of continuous labor.

Perhaps enough has been said in the opinions which have been and will be adopted. I concur in most of what is said in the opinion prepared for the Court by the learned Circuit Judge whose wise counsel we have in the disposition of this case, but I feel impelled to state here some of the things not stated in that opinion which bring me to a somewhat different conclusion from that which prevails.

The main·opinion states the facts of the controversy now before the Court which may be summarized as follows: A entered into a contract with B by which A held B's property in trust for the purpose of sale and a conveyance of the property was made, executed and delivered by B to A in trust, that A might be in position to transfer the title to the property to a purchaser. The contract provided that A might convert the conveyance to a conveyance in fee by exercising the option to purchase the property himself upon electing to comply with the terms·under which he was authorized to sell and convey the property to another. A's rights under the contract ran to his assignee. A, after a period of time, sought to revoke and cancel the contract and the trust deed by a suit filed for that purpose. A and his assignee in his answer to that suit elected to exercise the option and prayed for specific performance. The final result was that A and assignee prevailed in the suit and procured a decree as prayed for and as fought for throughout many years of litigation of that case. Both A and B filed in the Court, after the modified and amended final decree was entered, definite acceptances of the terms and conditions of the decree. It then developed that although A and his assignee were ready and willing to carry out the terms of the final decree, they were unable to do so, which

inability, they aver, was due to the refusal of appellee to comply with her agreement as she was bound to have done. Conceiving that it was inequitable for B, after having thwarted for years their efforts to reach the conclusion attained by this rendition of the modified final decree, and had thereby placed them in position where they could not perform further, to hold a certain sum of money that had been decreed to be due her as a cash payment on the property and which was decreed to her as a part of the consideration for the title passing to A's assigns and at the same time in addition thereto, procure the exact result which she attempted to procure and contended for during years of litigation, A and his assignees appealed from the modified final decree contending that in equity and good conscience the decree should not be enforced as entered. The equity of this contention has appealed to members of this Court as probably having merit, but this Court is reviewing a final decree in which there appears to be no error and as to which the parties, at and after the rendition thereof, indicated by papers filed in the cause their unqualified acceptance. It is not within the province of this Court to assume original jurisdiction to determine equities between parties which equities are based on facts and circumstances either arising or becoming known and appearing after the rendition of the decree appealed from.

Appellee's insistence is that the modified and amended final decree entered by the Circuit Court in accordance with the mandate of this Court on a previous appeal is free from error and in accordance with the Supreme Court's mandate and that by it the record in this suit has been finally closed and all possible equities conclusively settled, as against any and all new proceedings of any kind or character.

But, as has been held by this Court, in the case of Sapp

v. Warner, 105 Fla. 245, 144 Sou. Rep. 481, an appeal in
equity is but a step in the cause, and even after a final de-
cree has been affirmed, a court of equity at all times still
retains its jurisdiction to do equity in the *enforcement* of
the decree rendered by it, until it is fully executed.

In equity cases the affirmance of a final decree of specific
performance by an appellate court is final and forever con-
clusive of the right of the successful party to have his rights
specifically enforced to the extent adjudged and set forth
in the decree as affirmed, or as directed to be entered or
amended by the appellate court. Such final decree not only
conclusively adjudicates and settles all matters of equity
that were actually litigated between the parties as grounds
either of complaint or of defense, but also all such rights
as might have been asserted by appropriate pleadings *prior*
to the entry of the final decree.

But, in cases where equitable considerations suggest it,
and where it is reasonably required for the purpose of pre-
serving the equities attempted to be made effective by the
*enforcement* of a particular form of final decree, a court
of equity may, even after final decree, and even after such
final decree has been appealed from and affirmed, or en-
tered after appeal pursuant to the directions of an appel-
late court, still entertain such further appropriate proceed-
ings as may directly relate to the character and extent, or
manner of its *enforcement,* of its final decree.

Thus, in a recently decided foreclosure case, it was lately
held by this Court in Sapp v. Warner, *supra,* that this per-
missible procedure of chancery courts by which they are
permitted to control and modify the enforcement of their
final decrees, included the right of the Chancellor, after a
mandate affirming a final decree had been lodged with him,
to entertain, on the basis of special and peculiar equities

asserted to have arisen *pendente lite* while the appeal was undecided, appropriate supplementary proceedings having for their object the enforcement of a special and peculiar new equity to give effect to which, it was deemed indispensable for the Chancellor to change and to modify the terms and conditions of the final decree as originally entered.

A Court of Chancery, when it grants such special and extraordinary relief, does not act as a court of errors to examine and reverse its previous final decree. On the contrary, it treats the original final decree and all the previous proceedings as valid, and then acting on established new and additional, as well as special and peculiar, equitable considerations shown to have arisen, that could not have been asserted in the case earlier, it proceeds to relieve the petitioning party against the inequitable or unjust consequences of a literal and exact execution of the final decree as initially rendered, when, under the prevailing new equities set up and established, it is made to appear that the entire benefits flowing from the equities as adjudicated in favor of one of the parties against the other, cannot in good conscience be allowed to be retained and enjoyed by him exactly as first awarded. See Sapp v. Warner, 105 Fla. 245, 144 Sou. Rep. 481; Bank of Kentucky v. Hancock, 6 Dana (Ky.) 284, 32 Am. Dec. 76.

Such special and supplemental relief, when applied for by a complainant, was, under the old equity practice, procurable on a supplemental bill, which, with permission of the Court, was permitted to be filed in an appropriate case, even after final decree as well as before, if the circumstances alleged warranted it. Secor v. Singleton, 41 Fed. Rep. 725; French v. Hay, 89 U. S. 22, 22 Wall. 238, 22 L. Ed. 854. A supplemental bill (or a petition of the same

nature under the new equity practice) may be brought, not only to insist upon the relief already prayed for or granted on the original bill, but upon relief wholly different from that prayed for in the original bill where facts which have since occurred, in equity require it. Miller v. Cook, 135 Ill. 190, 25 N. E. Rep. 756, 10 L. R. A. 292 (citing Story Eq. Pleading, 8th Ed. par. 336).

Under the reformed equity practice set up in the 1931 Chancery Act, supplemental petitions take the place of supplemental bills and supplemental bills in the nature of a bill of review. See Section 27 of Chapter 14658, Acts of 1931, Laws of Florida. But in substance, supplemental petitions filed under Section 27 of the 1931 Chancery Act are in legal effect supplemental bills, and when filed, must conform to the conditions, requirements and manner of pleading that governs true supplemental bills, or supplemental bills in the nature of a bill of review. A bill in the nature of a bill of review is the proper way to directly attack a final decree for equitable reasons going to its substance, such as fraud and the like. Miami Bank & Trust Co. v. Mahlstedt, 107 Fla. 282, 144 Sou. Rep. 659. And on the same principle a petition to be filed in the same cause, in form and substance a supplemental bill in the nature of a bill of review, is the appropriate way to invoke the discretion of the Chancellor to change or modify a final decree in the character of relief to be incorporated in it, or to change it in any way essential to give effect to a new or peculiar equity that has arisen since the decree was entered.

After final decree, any petition having the characteristics of a supplemental bill in the nature of a bill of review is to be treated as being in all respects subject to the rules that govern and control the disposition of a true bill in the nature of bill of review, and such petition can only be filed

with the express leave of the Chancellor, or the express leave of the appellate court, in cases where the final decree has been affirmed by that tribunal, or entered pursuant to its direction.

After it is permitted to be filed, all equities asserted by it are subordinate to any countervailing equities that may have accrued in favor of third parties under the force and effect of the final decree as entered. And to it, the same equitable defenses, such as laches, waiver, estoppel and the like may be interposed by the opposite parties in interest, as would be capable of being interposed to a supplemental bill as it was authorized under the ancient equity practice before the adoption of the new Chancery Act.

The present suit originated in an equity proceeding filed by Bula E. Croker, as an actor in the court of equity, seeking to have judicially reconveyed or decreed back to her the title to valuable lands which, at the time of the institution of that suit, was of record in the name of Palm Beach Estates. In opposition to Mrs. Croker's claim, Palm Beach Estates became an actor to the extent (but to that limited extent only) of seeking to have its status changed by judicial decree from that of holder of the legal title in trust, to that of holder of the legal title as a vendee under its option to purchase the property from complainant, which option was exercised after the suit was begun. The sum deposited by Palm Beach Estates in the registry of the Court was but a small part of the value of the lands involved. Its disbursement at this time is not the principal thing, but a mere subsidiary incident to, the winding up of the main controversy that the court below and that this Court, has adjudicated.

The gist of the contention of Palm Beach Estates and J. B. McDonald, the appellants, is involved in their attempt

to invoke the equitable principle that he who prevents a thing from being done shall not avail himself of the non-performance he has occasioned, or as it is stated in a Latin maxim, *"nullus commodus capere potest de injuria propria,"* by asking the Chancellor to relieve them of their failure to perform on their part the terms and conditions of the final decree or else suffer a loss of the title to the property through a transfer of same from them back to Bula E. Croker, while at the same time Mrs. Croker received and retains the benefit of a substantial portion of the purchase price tendered into court, which tender she has, for a number of years, refused to take and thereby completely thwarted any beneficial enjoyment of the vended property by appellants who held title to it.

The effect of the final decree, as entered, was to confirm the title held in the name of appellants by converting it from that of trustee to vendee. The final decree at the same time had the effect of transferring the title to the deposit in court to Bula E. Croker. But the final decree went further than this. It required something more to be done by Palm Beach Estates and J. B. McDonald to hold the title thus confirmed in item as vendees. And in default of doing it, the final decree as originally entered, imposed as a consequence of default by the vendees, the reconveyance of the title to the property of Bula E. Croker. To the extent last mentioned, the final decree undertakes to confer a direct benefit on Bula E. Croker in the nature of the accomplishment of the whole object of her litigation in the first instance. This was to get the title to her property back in her name and defeat the confirmation of it in Palm Beach Estates or J. B. McDonald.

This is a specific performance suit, it is true, but one wherein at the time the suit was begun, the legal title to

the *res* involved was already vested in the complaining litigants who finally succeeded in establishing through a decree of specific performance, their rights as vendees holding title and in possession. If the decree as entered stands unaltered, its practical effect is to cancel of record in Bula E. Croker's favor the documentary evidence of the title now standing in the name of appellants, and to permit her to receive and retain without diminution, that part of the initial payment represented by the deposit of $321,104.73 remaining in the registry of the court which the final decree gave to her.

Appellants in this situation, make the contention that their failure to perform the terms of the final decree as entered is not wilful, but can in equity be shown to be excusable by reason of the adverse effect upon them occasioned by the undue prolongation of the litigation brought about almost solely by Mrs. Croker's attempt to defeat their equitable and legal rights in this litigation in which she was unsuccessful throughout. An equity of this character, as an appeal to the conscience of a court of equity, may, even at this late day, in the light of what was decided in Sapp v. Warner, *supra,* be permitted to be set up by a petition for special and extraordinary relief in the nature of a supplemental bill directed at the terms and conditions imposed for the execution of the final decree and concerning the nature, character and extent of the relief which should be afforded thereby. It is limited to an effort to secure such a modification of the terms of the final decree as will preclude the decree's operation as a reconveyance to appellee, as vendor, of the title to the lands involved unless and until the appellee, Bula E. Croker, shall do equity toward the appellants, Palm Beach Estates and J. B. McDonald, with reference to such portion of the cash moneys as she has had adjudged to her under the final decree and has accepted

and will receive under it, if the Court should deem such relief appropriate to carry into effect equitable principles of the kind mentioned and set forth in Taylor v. Rawlins, 86 Fla. 279, 97 Sou. Rep. 714, 35 A. L. R. 271, should the same be found to be equitably justified on such supplemental proceeding.

It appears to me that whatever grounds there may be for equitable relief from the terms of the final decree must necessarily be grounded upon and arise from those equitable conditions, if any, which may be created by the execution of the final decree and that, therefore, such relief, if any, can be had on a petition in the nature of a bill of review. After decree is unconditionally affirmed the Chancellor may not grant the filing of such bill without the permission of this Court.